IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| e.DIGITAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 2:08-cv-93-DF-CE |
| AVID TECHNOLOGY, INC., CASIO | ) | |
| AMERICA, INC., LG ELECTRONICS | ) | |
| USA, INC., NIKON INC., OLYMPUS | ) | |
| AMERICA INC., SAMSUNG | ) | |
| ELECTRONICS AMERICA, INC., and | ) | |
| SANYO NORTH AMERICA | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**e.DIGITAL CORPORATION'S OPPOSITION TO SAMSUNG'S MOTION TO
COMPEL INFRINGEMENT CONTENTIONS IN COMPLIANCE WITH PATENT
RULE 3-1 AND TO LIMIT e.DIGITAL TO ITS PRIOR THEORIES**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND PROCEDURAL POSTURE ...................................................2

    A.    e.Digital's Investigation of the Accused Products ................................................. 2

    B.    e.Digital's Infringement Contentions.................................................................... 3

    C.    e.Digital's Meet-and-Confer with Samsung ......................................................... 4

        (1) Samsung's Disclosure of Sources of Circuitry Information ........................... 5

        (2) Samsung's Allegations Regarding Non-U.S. Sales ....................................... 7

II.   ARGUMENT AND CITATION TO LEGAL AUTHORITY...........................................9

    A.    e.Digital's Contentions Satisfy the Specificity Requirement of Patent
        Rule 3-1.............................................................................................................. 10

    B.    e.Digital's Amended Contentions Specify Where Each Claim Limitation
        Is Found in the Accused Products and How the Method Claims Are
        Infringed.............................................................................................................. 12

    C.    Samsung's Attempt to Limit e.Digital's Infringement Theories Is
        Premature and Improper ..................................................................................... 14

III.  CONCLUSION...........................................................................................................15

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*American Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F.Supp.2d 558 (E.D. Tex. 2005)........ 9-10

*ConnecTel, LLC v. Cisco Systems, Inc.*, 391 F. Supp.2d 526 (E.D. Texas 2005) ........................12

*Mass. Inst. of Tech. v. Abacus Software*, 2004 U.S. Dist. LEXIS 30045 (E.D. Texas Sept. 10, 2004) .............................................................................................................................12

*Orion IP, LLC v. Staples, Inc.*, 407 F.Supp.2d 815 (E.D. Tex. 2006) ...................................10, 14

*STMicroelectronics, Inc. v. Motorola, Inc*., 308 F. Supp. 2d 754 (E.D. Tex. 2004) ...................10

<u>Other Authorities</u>

Local Rule 7(a)(2)..........................................................................................................................1

Local Rule CV-7(h) .......................................................................................................................7

Rule 3-1.................................................................................................................................. Passim

Rule 3-1(b) ...................................................................................................................................10

Rule 3-4.............................................................................................................................2, 9, 11

Samsung's Motion should be denied because it improperly seeks to:

(1) compel further detail that e.Digital already has agreed to provide by March 31;

(2) compel further detail that e.Digital already has agreed to provide following Samsung's forthcoming supplementation of its incomplete Rule 3-4 disclosures;

(3) prematurely resolve issues of claim construction by seeking to limit e.Digital to an infringement theory that Samsung mischaracterized as deficient; and

(4) absolve itself of infringement liability for new products that it introduces after the date e.Digital served its initial contentions (November 21, 2008).

After sifting through the 42 pages of hyperbole and innuendo that comprise most of Samsung's Motion,[1] it becomes clear that Samsung was determined to file a motion to compel, rather than timely resolve alleged deficiencies in e.Digital's infringement contentions.  This is most clearly evidenced by the fact that the Motion seeks to compel, among other things, the same additional detail that e.Digital already agreed to provide by March 31 -- hardly the discovery "impasse" that the local rules require be present before filing a motion.  (*See* Declaration of Matthew Yungwirth ("Yungwirth Decl.") (filed herewith), at ¶ 3 and Ex. A).  As Samsung confirmed in its recent March 12 letter, it filed its Motion because e.Digital's proposed March 31 deadline to provide further details that Samsung claims are necessary and lacking simply was not soon enough:

> "And Samsung's position remains the same today as it always has -- **if e.Digital immediately provides adequate infringement contentions to Samsung . . . as required by the local Patent Rules, Samsung will withdraw its motion**."

(Yungwirth Decl. at Ex. B, p.1, emphasis added).  However, as e.Digital's counsel represented at the final meet-and-confer in Dallas just two days before Samsung made its 932 page filing,

---

[1] The total length of Samsung's filing is 923 pages that include 42 pages of argument -- 15 page Motion, 19 page Attachment A, and 8 page Appendices (as opposed to Exhibits) to the Declaration of Christopher M. Gerson.  These three documents contain Samsung's arguments. Although Samsung complied with the letter of Local Rule 7(a)(2) and the Court's September 25, 2008 Order by filing a 15 page "motion," it did not comply with the spirit of the Rule or Order because its arguments actually span 42 pages, not including the Declarations or exhibits thereto.

e.Digital has been proactively working with Samsung to timely address the purported contention deficiencies.  And, the real disconnect between the parties has been Samsung's reluctance: (a) to identify (until the filing of this Motion) most allegedly "public" sources of information (of which e.Digital was unaware and that e.Digital is now using to supplement its infringement contentions), and (b) to produce sufficient non-public technical information, as required by Patent Rule 3-4 and requested in discovery, that e.Digital could use to provide much of the detail that Samsung seeks.  e.Digital submits and as established below that Samsung's Motion was unnecessary and intended to force e.Digital to incur unnecessary costs to prosecute its claims.

## I.   INTRODUCTION AND PROCEDURAL POSTURE

e.Digital filed this patent infringement action against Samsung and six other defendants in this case alleging infringement of the four patents-in-suit.  Samsung is the sole remaining defendant.[2]  The accused Samsung products are handheld recording/playback devices, which are alleged to infringe the patents-in-suit because they are capable of recording sound data onto flash memory as claimed in the asserted apparatus and method claims.

### A.   e.Digital's Investigation of the Accused Products

As part of its pre-filing investigation of the defendants' products, e.Digital conducted diligence of the potentially infringing products and prepared detailed infringement claim charts for representative products.  e.Digital's diligence included searching publicly available sources of information of which it was aware to learn more about the operation of the accused products and to confirm the functionality of those products met the claim limitations.  (*See* Declaration of James Y.C. Sze ("Sze Decl.") (filed herewith), at ¶¶ 8-9).  Most of the publicly available

---

[2] *See* Doc. Nos. 93, 123, 134, 143, and 146 (Orders of dismissal following settlements); and 136 (second motion to stay pending finalizing terms of settlement and dismissal).

information that e.Digital obtained consists of high-level functionality descriptions, rather than details regarding the architecture of the processors as implemented in the accused products. However, that level of detail is sufficient to satisfy e.Digital's pre-filing obligations and to put the defendants on notice of e.Digital's infringement theories because the asserted claims do not drill down into processor intricacies such that meaningful distinctions are made from one brand of processor to another.  (*Id.*).  Indeed, the claims of the asserted patents are broad in scope and focus on the fundamental aspects of using flash memory to record and store audio data on handheld recording/playback devices such as modern cameras, camcorders, and mobile phones. e.Digital's claim charts, therefore, identified the components of the accused products that it believed performed the functionality encompassed by the asserted claims.

### B.    e.Digital's Infringement Contentions

On November 21, 2008, e.Digital served its Patent Rule 3-1 disclosures on Samsung ("Initial Infringement Contentions") and four other defendants.[3]  e.Digital explained that its Initial Infringement Contentions were based on limited publicly available information regarding the operation of the accused products; but that it intended to confirm its beliefs through the discovery process.  (*See*, *e.g.*, Doc. No. 139-6 at p. 5).  This caveat should not have been a surprise to Samsung because its products contain proprietary technology for which public information is very limited.  As previewed in the Initial Infringement Contentions, e.Digital served discovery three days later that was aimed at, among other things, confirming its belief (based on its investigation) that the processors in the accused products include the basic processor components required by the asserted claims and would be typical for this technology. Samsung commenced its production of documents in responses to e.Digital's discovery requests

---

[3] By November 21, e.Digital had settled with two defendants.  (*See* Doc. Nos. 92 & 104).

on March 14.  (*See* Yungwirth Decl., at ¶¶ 15-16 and Ex. C).

Soon after e.Digital served its Initial Infringement Contentions, it realized that several errors had been introduced into the contentions as a result of its simultaneous preparation of contentions for five different defendants and many accused products.  (Doc. No. 139-9 at p.4). Simultaneously, on December 5, Samsung first notified e.Digital that it believed the Initial Infringement Contentions were deficient.  (Doc. No. 139-8).  The errors identified by e.Digital were among the deficiencies identified by Samsung.  e.Digital agreed to provide Samsung with amended contentions that both corrected the identified errors and attempted to satisfy Samsung's other concerns, despite e.Digital's view that Samsung's other concerns exceeded the requirements of Rule 3-1.  (Doc. No. 139-9).   e.Digital provided amended infringement contentions to Samsung on December 30, 2008 and it believed its amendments would satisfy the concerns raised by Samsung's counsel's December 5 letter.[4]

### C.       e.Digital's Meet-and-Confer with Samsung

Over the three months that followed e.Digital's service of its infringement contentions on the defendants, e.Digital and Samsung engaged in the meet-and-confer process regarding the sufficiency of the e.Digital's contentions.  For the Court's convenience, a timeline of the key events in the meet-and-confer process is attached hereto as Exhibit A.

In resolving this Motion, it is important for the Court to understand that throughout the meet-and-confer process, Samsung has persistently accused e.Digital of failing to meet its duty

---

[4] Samsung's suggestion that e.Digital is ignoring its obligation to obtain this Court's approval to amend its contentions is simply wrong.  With its proposed first amended contentions that were served on December 30, e.Digital provided to Samsung a draft motion for leave to serve its contentions.  (Yungwirth Decl. at Ex. D).  e.Digital understands its duty to seek leave to amend its contentions, but it hoped to do so with Samsung's consent after Samsung was satisfied that its concerns were met by the amended contentions.  e.Digital will seek leave to amend, with or without Samsung's consent, once this motion is resolved, as necessary.

to investigate the accused products through review of sources of publicly available information, while at the same time, refusing to identify the sources of information that it contends should have been reviewed. Samsung's practice is most tellingly evidenced by comparing the parties' meet-and-confer discussions with the allegations in Samsung's Motion related to (1) the identification of certain circuitry elements and (2) whether certain accused products are sold in the United States. As explained below, the detail that Samsung declined to provide to e.Digital during the meet-and-confer is front and center for the Court in the Motion.

### (1) Samsung's Disclosure of Sources of Circuitry Information

Samsung has claimed that e.Digital should have identified with specificity the exact location in the processors for each accused Samsung product where the claimed "control circuitry," "compression circuitry," "DSPs," "CODECs" "printed circuit boards," "recording means," and "cache memory" can be found. (*See* Motion at Attachment A, p. 1). Although Samsung has not stated any belief that the accused products lack the claimed circuitry and related components, it has contended throughout the meet-and-confer process that e.Digital failed to comply with its Patent Rule 3-1 obligation by not identifying from "publicly available sources" specifically where in the processors those elements can be found.

Because e.Digital wanted to avoid wasteful motion practice and because Samsung and its counsel were presumably aware of sources of public information regarding its own products that were not known to e.Digital, e.Digital inquired throughout the meet-and-confer process as to the identity of the sources of information to which Samsung referred so that e.Digital could consult those sources. (*See* Doc. No. 139-16, p. 4). Samsung was reluctant to identify any such source, claiming that it is not Samsung's duty to identify such sources of public information: "Even more incredible is that e.Digital . . . has asked Samsung to provide links and publicly available documents to help e.Digital formulate adequate infringement contentions. This is not Samsung's

burden." (*Id.*).  e.Digital, however, was not asking for help in formulating its contentions and it was not intending to impose on Samsung any such duty, other than its duty to provide full discovery responses and comply with the meet-and-confer rules.  However, e.Digital explained that if Samsung wanted additional detail and knew where it could be found, it was in Samsung's interest to tell e.Digital so that e.Digital could more quickly provide the requested detail.

In response, Samsung identified for the first time a single source of information, www.manualuniverse.com, a website from which e.Digital could purchase service manuals for some of the accused products.  Importantly, this is not a website that was known to e.Digital or its counsel and it is not one that is sponsored by Samsung.  Stated differently, this is not the type of website that a party would necessarily find as part of a pre-filing investigation, but instead is the type of website that Samsung was privy to and directed e.Digital to for additional information.  Approximately two weeks after Samsung identified that source of information, e.Digital used information it purchased from this website to amend its contentions to provide additional detail for the representative accused products.[5]

By comparison, two days after Samsung unilaterally terminated the meet-and confer, it filed its Motion and accompanying exhibits that spanned over 923 pages and identified <u>twenty</u> <u>new</u> <u>websites</u> that Samsung characterizes as sources of "publicly available" information -- <u>websites that Samsung never identified during the meet-and-confer process and of which</u> <u>e.Digital was not aware</u>.  Many of these websites are in Japanese, Korean, and Czech and hardly

---

[5] (*See* e.Digital's Second Amended Disclosures of Asserted Claims and Preliminary Infringement Contentions to Samsung Electronics America, Inc. ("e.Digital's Amended Contentions"), Doc. No. 139-18, 19 and 20).  e.Digital's Amended Contentions were intended to address Samsung's concerns by: (i) creating sub-groups within the camcorder and mobile phone families based on distinctions identified by Samsung's counsel, (ii) adding detail regarding the processors and related components based on newly discovered information, and (iii) provide further detail regarding how the steps in the method claims were performed.

can be considered sources of public information; and none of them appear to be sponsored by Samsung.[6]   Nevertheless, had Samsung revealed these websites during the meet-and-confer, e.Digital could have at least considered them in the meet-and-confer process.   Inexplicably, instead of providing this information, which likely would have resolved many of the current issues, Samsung withheld this information until the filing of its Motion.  e.Digital is at a loss to understand how the meet-and-confer process can be satisfied when Samsung is willing to tell the Court the locations of publicly available information as part of its Motion, but is not willing to tell e.Digital about these same sources as part of the meet-and-confer process.   e.Digital respectfully submits that Samsung did not satisfy the "expectations of the court" that the parties "fully cooperate in discovery of relevant information," as required by Local Rule CV-7(h).

**(2) Samsung's Allegations Regarding Non-U.S. Sales**

As a second example, on February 20 and 25, Samsung alleged for the first time that 76 of the 131 originally accused Samsung products are not sold in the United States.  According to Samsung this is concrete evidence that e.Digital did not conduct a proper investigation prior to serving its Initial Infringement Contentions. However, similar to Samsung's other blanket allegations in its Motion, there is less to this allegation than meets the eye.

e.Digital first identified 71 of these 76 products on November 21 when it served its Initial Infringement Contentions.[7]   Samsung first alleged the absence of U.S. sales for the 76 products

---

[6] The new websites include: qctconnect.com, maxim-ic.com, qimonda.com, focus.ti.com, datasheetpro.com, datasheetcatalog.org, datasheetdir.com, kr.ic-on-line.cn, alldatasheet.com, datasheet4u.com, datasheetarchive.com, digchip.com, tw.ic-on-line.cn, ic-on-line.cn, cn.ic-on-line.cn, jp.ic-on-line.cn, ic-cn.com.cn, soft.laogu.com, nanya.com, and penguin.cz.  Examples of the foregoing websites in foreign languages are attached as Ex. E to the Yungwirth Declaration.

[7] With respect to the five other products, e.Digital discovered those camcorders in February 2009 when it searched for service manuals on www.manualuniverse.com, as directed by Samsung.  According to the service manuals and related product documentation for three of

(Continued…)

7

three months later -- on February 20 and 25 -- when it provided sworn declarations from its employees in support of its allegation.  e.Digital immediately informed Samsung that while the declarants' allegations are contrary to e.Digital's initial investigation, it agreed to remove the identified products from the list of accused products, until such time as "discovery shows that the products identified by Samsung were sold, offered for sale or imported into the United States as e.Digital initially believed. . . ."  (Yungwirth Decl. at Ex. F, p. 3).

Now, in its Motion, Samsung makes much ado about e.Digital's alleged failure to "even realize that 76 of the products are not, and never have been, sold by Samsung in the United States."  (*See* Motion at p 2).  However, Samsung's rhetoric is inconsistent with the facts.  Based on a recent search of two United States-based websites, www.amazon.com and exoticphone.com, e.Digital has re-confirmed that at least 34 of the 76 products alleged by Samsung to not be sold in the United States, in fact, can be purchased from those two websites and shipped to United States consumers from locations within the United States.  (*See* Sze Decl. at ¶¶ 10-11).  In other words, the limited publicly available information again supports e.Digital's contentions.

As the foregoing examples illustrate, e.Digital is not the bad actor portrayed by Samsung. Rather, e.Digital has repeatedly agreed to review all sources of information of which it becomes aware and to add to its contentions any detail that it finds or otherwise amend its contentions, as necessary.  e.Digital's willingness to move this case forward by addressing Samsung's concerns continued through the March 4 meet-and-confer when it agreed to provide additional detail that

---

(Continued…)

the previously accused camcorders, the five new model numbers that e.Digital identified appear functionally equivalent for the purpose of the infringement analysis to the previously identified camcorders.  In any case, this issue is moot with respect to all but the SC-X105L because e.Digital is not currently accusing the other products of infringement in light of Samsung's allegation that they are not sold in the United States.  (*See* Yungwirth Decl. at Ex. F).

Samsung now seeks to compel.  To put in context the relief sought by Samsung in its proposed

order, e.Digital's responsive positions can be summarized as follows:

(a) With respect to Nos. 1-10 & 13, e.Digital agreed on March 4, to provide more detail
regarding the requested specifics of "what" meets the claim limitations in the
accused products for which Samsung has made its Rule 3-4 disclosures; and to
provide further supplementation for the remaining accused products as soon as
Samsung makes its corresponding Rule 3-4 disclosures; [8]

(b) With respect to Nos. 8-12, to the extent Samsung seeks more detail as to "how" the
accused products meet the claim limitations, the Motion is procedurally deficient in
that it is based on a premature claim construction argument that should be addressed
during the *Markman* process;

(c) With respect to Samsung's request that e.Digital's infringement theories be limited
based on mistakes in the Initial Infringement Contentions, e.Digital concedes that it
cannot change its infringement theory absent leave of the Court, but contends that
its theory has not changed; and

(d) With respect to Samsung's request that the accused products be limited to those
identified in the Initial Infringement Contentions, there is no basis for the advisory
opinion that Samsung seeks and that would give Samsung a free pass with respect
to products it introduces after the Initial Infringement Contentions were served.

e.Digital's positions above are consistent with the letter and spirit of this Court's Patent Rules.

## II.      ARGUMENT AND CITATION TO LEGAL AUTHORITY

As this Court has regularly found, the Local Patent Rules "demonstrate high expectations

as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their

preliminary infringement contentions before discovery has even begun." *American Video

Graphics, L.P. v. Elec. Arts, Inc.*, 359 F.Supp.2d 558, 560 (E.D. Tex. 2005).  The Court also has

found that a plaintiff has satisfied its duty under Local Patent Rule 3-1 when its infringement

contentions identify "particular theories of infringement with sufficient specificity to provide

---

[8] Based on e.Digital's review of Samsung's initial Patent Rule 3-4 Disclosures, they
appear only to include limited documentation for 32 accused products.  On March 15, e.Digital
received a second document production from Samsung that is still being processed.  (Yungwirth
Decl. at ¶ 6).  It is unclear whether that data includes the missing Patent Rule 3-4 disclosures.

defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves." *Orion IP, LLC v. Staples, Inc.*, 407 F.Supp.2d 815, 817 (E.D. Tex. 2006); *see also* Patent Rule 3-1(b).

However, this Court also has recognized that in certain instances, there may be limits on how specific a plaintiff can be in describing its theory of infringement in its initial infringement contentions. For example, the Court has found that "in software cases, the Court has recognized the pragmatic limitation on detailed PICs when plaintiffs do not have the necessary access to non-public software." *Id.* at 817; *accord, e.g., American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558 (E.D. Tex. 2005) (patent owner's preliminary infringement contentions regarding accused software were specific enough given the patent owner's lack of access to the source code when it prepared its PICs); *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) (it is enough "'to identify particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent rules themselves.'"). In other words, "[t]he Patent Rules intend to strike a balance of providing fair notice to defendants without requiring unrealistic, overly factual contentions from plaintiffs, but the burden of notice the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword." 407 F.Supp.2d at 818.

A.    **e.Digital's Contentions Satisfy the Specificity Requirement of Patent Rule 3-1**

e.Digital has maintained and continues to believe that its Initial Infringement Contentions satisfied Patent Rule 3-1 by putting Samsung on notice as to e.Digital's infringement theories, based on the limited availability of public information of which e.Digital was aware. And although Samsung plays lip service to the notion that e.Digital's Amended Contentions still do not put Samsung on notice of the infringement theories, Samsung's 923 page filing tells a different story. Samsung had absolutely no problem identifying instances in which e.Digital

mistakenly identified a processor within an accused product, and pointing out to the Court the processor that e.Digital should have identified.  (*See, e.g.,* Motion at fns. 5 and 8).  Simply put, Samsung understands e.Digital's theories, and not surprisingly it has used its institutional knowledge of its products and sources of information about those products to manufacture arguments in its Motion to try to make e.Digital look bad.

While e.Digital believes it has satisfied Patent Rule 3-1, it also recognizes that mistakes have been made with its Initial Infringement Contentions, and in those instances, e.Digital has acted in good faith to remedy those mistakes.   e.Digital has willingly embraced its duty by searching sources of publicly available information of which it became aware on its own and through Samsung and making such corrections that are reflected in e.Digital's Amended Contentions.  Likewise, e.Digital has maintained throughout the meet-and-confer process that it is willing to work with Samsung to provide additional detail that is reasonably requested by Samsung as quickly as possible so that the parties can get on with this case, rather than get bogged down in motion practice.   e.Digital's actions along these lines are well documented above and include its agreement to provide by March 31 further detail based on Samsung's Rule 3-4 disclosures and an explanation of the methodology of its grouping of products.[9]  (Yungwirth

---

[9] Samsung's Motion is replete with examples of mischaracterization of e.Digital's positions.  A particularly egregious example can be found on page 5 of the Motion where Samsung claims that e.Digital "declared that it would not amend its Contentions again unless Samsung itself provided e.Digital with websites and other sources of information.  (*See* Ex. H.)"  Of course e.Digital did no such thing.  As referenced in "Ex. H" -- a January 29 letter from e.Digital's counsel to Samsung's counsel -- e.Digital repeatedly agreed unconditionally to amend its contentions: "[w]e intend to provide those additional charts shortly[,]" "we agree to further review the standard specification cited in e.Digital's PICs and, include, as appropriate, specific reference to the specification[,]" and "[i]f the information is available and we have missed it, we are happy to provide the additional detail that you request . . . if the information is not publicly available, we will supplement e.Digital's PICs as soon as practical following Samsung's February 13 production of detailed information[.]"

Decl. at Ex. A, pp. 1-2).   Obviously, if Samsung disagrees with the grouping methodology, e.Digital must move the Court to affirm the methodology or provide claim charts for the products within the unacceptably grouped families.

Moreover, Samsung's Motion mischaracterizes several opinions it has cited in support of its argument that e.Digital's contentions are insufficient at this stage of the case.   For example, Samsung relies on *ConnecTel, LLC v. Cisco Systems, Inc.*, 391 F. Supp.2d 526 (E.D. Texas 2005), for the proposition that e.Digital must crystallize and provide its infringement theories at an early stage in the case to allow for more focused discovery and narrowing of the issues in the case.   Although e.Digital does not dispute that it is required to provide sufficiently detailed infringement contentions by the deadline imposed in the Docket Control Order, the facts and circumstances in *ConnecTel* are a far cry from the circumstances in the instant case.   In *ConnecTel*, the court found that the patent holder had not satisfied Patent Rule 3-1 where the charts in its infringement contentions "do not refer in their text to a single structure, process, algorithm, feature or function of any accused product."   *Id*. at 528.   The forty-seven single spaced, small type, 11x17 pages that constitute e.Digital's Amended Contentions are quite distinguishable from the contentions described by the Court in *ConnecTel*.[10]

**B.      e.Digital's Amended Contentions Specify Where Each Claim Limitation Is Found in the Accused Products and How the Method Claims Are Infringed**

In Sections III, C. and D. of its Motion, Samsung contends that e.Digital's Amended Contentions do not specify where each claim limitation is found or how the asserted method

---

[10] As a second example, Samsung's reliance on *Mass. Inst. of Tech. v. Abacus Software*, 2004 U.S. Dist. LEXIS 30045 (E.D. Texas Sept. 10, 2004) is similarly distinguishable because in that case, the Court considered the sufficiency of contentions served after discovery had progressed and a *Markman* order already had been issued.   *Id*. at *18-21. In the instant case, discovery has just commenced and the *Markman* hearing is not scheduled until February 2010.

claims are infringed.  Samsung, however, ignores the specific language of the contentions.

First, Samsung argues that e.Digital's use of the terms "believes" and "other systems" create confusion as to what e.Digital is accusing of infringement.  Samsung's argument does not make any sense, as e.Digital does not use the terms "believes" or "other systems" to describe where the claim limitation is found in the accused product in the referenced contention (Ex. K, p.3, claim 10).  Instead, e.Digital first identifies the processor that it understands is in the accused product and in which the claimed "circuitry for compression" can be found:

> Similar to the "control circuitry" element in claim 1, based on e.Digital's investigation to date, it is e.Digital's understanding that the Samsung S-860 camera uses a Zoran COACH processing integrated circuit that includes compression circuitry to compress audio data for storage on flash memory.

Then, after disclosing what meets the claim limitation, e.Digital explains that there is limited public information about the processor and that its understanding is based on its familiarity with similar processors.  e.Digital's explanation that follows its contention that the "Zoran COACH processing integrated circuit" meets the claim limitation does not create confusion.

Second, Samsung argues that e.Digital's Amended Contentions are deficient because they do not explain the method by which the accused Samsung products "write[] and store[] data to flash memory without using the traditional file allocation tables found in nearly all file memory systems."  (Motion at 11).  However, e.Digital's contentions provide both the "what" and "how" of its theory by identifying specific components within the accused products and the manner in which data is manipulated by those components.  (*See*, *e.g.*, Doc. No. 139-18, 19 and 20, pp. 35-37 (including discussion of processor components (what) and steps for writing data by identifying next available memory using linked list (how)).[11]

---

[11]  (*See also*, *id.* at p. 22 (corresponding discussion of root folder in charts for recording means limitation of '737 Patent, Cl. 1).  To the extent that Samsung seeks more detail regarding

(Continued…)

Samsung's argument really is a claim construction argument in disguise.  Apparently, Samsung intends to advocate a construction of the claims to which it refers that excludes the linking described in the contentions by characterizing that type of linking as a traditional file allocation table.  Accordingly, Samsung requests that the Court prematurely embrace Samsung's construction by refusing to accept as sufficient e.Digital's infringement contentions and instead, compel e.Digital to rephrase its contention so that Samsung can use the rephrased contention against e.Digital during the claim construction process.  In other words, Samsung improperly invites this Court to turn e.Digital's Rule 3-1 obligation into a claim construction sword, rather than a shield.  *Orion IP*, 407 F.Supp.2d at 818 ("the burden of notice the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword.").

### C.      Samsung's Attempt to Limit e.Digital's Infringement Theories Is Premature and Improper

Samsung is trying to use mistakes in e.Digital's Initial Infringement Contentions that were corrected in e.Digital's Amended Contentions to create bases to avoid liability for many of the accused Samsung products.  Samsung's arguments are two-fold.  First, Samsung argues that e.Digital's infringement theory should be limited by its initial mistaken belief that all of Samsung's cameras and camcorders use a Zoran COACH processor.  According to Samsung, when e.Digital corrected that mistake and identified the correct processor that performs the same functionality as the Zoran COACH processor for purpose of the infringement analysis, e.Digital "changed its theory."  That is nonsense.  e.Digital did not change its theory; it simply corrected its errant belief that the accused processor for each of accused cameras and camcorders was a

_____

(Continued…)

the specific memory controller and/or processor that performs the writing, identifying, etc., e.Digital already agreed to provide that additional data by March 31, similar to control circuitry.

Zoran processor, instead of a comparable processor manufactured by TI, Fujitsu, Samsung, etc.

Furthermore, e.Digital's corrected mistake has not caused any prejudice to Samsung, yet it is seeking a death penalty sanction as to these products.  Essentially, Samsung is asking this Court to find non-infringement by limiting e.Digital to accusing a Zoran COACH processor in products that Samsung knows do not contain such processors.  Since e.Digital served its Initial Infringement Contentions, Samsung has known (i) what processors are in its products that perform functionality similar to the Zoran processor, and (ii) that certain of the accused products did not contain a Zoran processor.  Accordingly, the draconian relief sought by Samsung based on a mistake that e.Digital corrected as soon as it was brought to its attention is not justified.

Second, Samsung argues that e.Digital should not be entitled to add to the list of accused products any products that e.Digital did not identify in its Initial Infringement Contentions, regardless of why the products were not previously identified.  Accordingly, what Samsung really seeks is an advisory opinion that precludes e.Digital from identifying accused products, such as products that Samsung introduces after e.Digital's November 21 service of its Initial Infringement Contentions or products that are identical to the identified products, but may be offered under a different model designation.  Because e.Digital would need to seek leave from the Court to accuse any new products, Samsung's requested advisory opinion is premature.[12]

## III.  CONCLUSION

Samsung's Motion should be denied to the extent that it is contrary to the proposed Order (attached as Ex. B) that conforms to e.Digital's proposal made at the March 4 meet-and-confer.

---

[12] Currently, e.Digital has identified five camcorders that it first identified in February 2009 and that appear to be functionally equivalent to previously accused camcorders.  Those five camcorders are identified in the Motion at footnote 10 and are discussed in footnote 9, *supra*. When e.Digital confirms that those products should be added to the list of accused products based on sales in the United States, it will seek leave of the Court to add them.

Respectfully and jointly submitted this 17th day of March, 2009,

/s/ _____
Michael C. Smith
Siebman, Reynolds, Burg, Phillips & Smith,
LLP – Marshall
713 South Washington Avenue
Marshall, Texas 75670
Tel.:    903.938.8900
Fax:    972.767.4620
michaelsmith@siebman.com

L. Norwood Jameson
Matthew S. Yungwirth
Duane Morris LLP
1180 West Peachtree St., # 700
Atlanta GA  30309-3448
Tel:    404.253.6900
Fax:    404.253.6901
wjameson@duanemorris.com
msyungwirth@duanemorris.com

Gary R. Maze
Wesley W. Yuan
Duane Morris LLP
3200 Southwest Freeway
Ste 3150
Houston, TX  77027-7534
Tel.:    713.402.3900
Fax:    713.402.3901
grmaze@duanemorris.com
wwyuan@duanemorris.com

*Attorneys for Plaintiff*
*e.Digital Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule 5.1. As such, this motion was served on all counsel who are deemed to have consented to electronic service. Pursuant to Fed. R. Civ. P. 5(d) and Local Rule 5.1, all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 17th day of March, 2009.

/s/_____
Michael C. Smith